D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SAMUEL PIERCE,

                        Plaintiff,

            - against -

RONA WOLDENBURG, M.D.,

                        Defendant.
----------------------------------------------------------X

**ORDER**
11-CV-4248 (SJF)(AKT)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ AUG 07 2012 ★

**LONG ISLAND OFFICE**

FEUERSTEIN, United States District Judge:

On August 4, 2011, pro se plaintiff Samuel Pierce ("plaintiff") commenced this action against defendant Rona Woldenberg ("defendant"), alleging violations of: (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI"); and (2) his rights under the Fourteenth Amendment of the United States Constitution. Complaint [Docket Entry No. 1] ("Comp."). Before the Court is defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). [Docket Entry No. 47]. For the reasons that follow, the motion is granted.

I.     Background

    A.     Facts Alleged in Plaintiff's Submissions

Plaintiff identifies himself as a twenty-four (24) year old "white Anglo-Saxon Protestant" male. Comp. at ¶ 6; Memorandum in Support of Motion for Preliminary Injunction ("P.I.

1

Mem.") [Docket Entry No. 7] at ¶ 19.[1] According to the complaint, plaintiff received an undergraduate degree magna cum laude from the University of Pennsylvania in May 2008. Compl. at ¶ 11. Plaintiff characterizes his academic record at the University of Pennsylvania as "positively extraordinary," noting that he completed his undergraduate studies in three (3) years while also completing nineteen (19) semester hours at the law school. P.I. Mem. at ¶ 9.

Plaintiff took the Medical College Admission Test ("MCAT") in June 2009 and received a score placing him in the "top two tenths of one percent" of test-takers. Compl. at ¶ 12. He subsequently applied for admission to various medical schools, including the Hofstra North Shore-LIJ School of Medicine at Hofstra University ("Hofstra"), where defendant is employed as Assistant Dean for Admissions.[2] On January 3, 2011, plaintiff attended an interview at Hofstra, where he met with Doctor Mark Mittler ("Doctor Mittler"). Id. at ¶ 13.

On April 5, 2011, plaintiff received an e-mail from defendant informing him that he had

---

[1] In reviewing the relevant factual background, the Court will consider the allegations from plaintiff's declaration and memoranda of law, in addition to those contained in the complaint. See Cusamano v. Sobek, 604 F.Supp.2d 416, 461 (N.D.N.Y. 2009) ("[T]he mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."); see also Burgess v. Goord, 98 Civ. 2077, 1999 WL 33458, at *1 n. 1 (S.D.N.Y. Jan. 26, 1999). Plaintiff's declaration and memoranda of law contain information that elucidates, and provides context for, the claims in the complaint.

[2] Plaintiff states that he applied to "many" medical schools in both 2010 and 2011, including Mount Sinai School of Medicine, David Geffen School of Medicine at the University of California - Los Angeles, and Harvard Medical School. He was not admitted to any medical program, and claims to have been rejected "by not just Harvard but a wide variety of less prestigious programs twice." Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Opp.") [Docket Entry No. 46] at 1-2. During a court conference on October 6, 2011, plaintiff stated that he chose to sue Hofstra, and not the other institutions, because it "is the school [he] would most like to go to" and because he "made it the furthest along in the admissions process at Hofstra." [Docket Entry No. 50] at 3:20-4:2.

2

not been granted admission to Hofstra, but that he had been placed on the school's alternate list. Id. at ¶ 16.[3] Later that same day, and then again on June 17, 2011, plaintiff spoke with Doctor Mittler by telephone. Id. at ¶ 17. Doctor Mittler allegedly told plaintiff that he "believed [p]laintiff's application should be accepted" and that "there was a good chance [p]laintiff's application would be accepted." Id. at ¶ 18. Doctor Mittler also suggested that plaintiff contact defendant, the Assistant Dean for Admissions, to express his interest in Hofstra's medical program. Id. at ¶ 19.

On August 1, 2011, plaintiff received another e-mail from defendant informing him that Hofstra would be unable to offer him a position in that year's class. Id. at ¶ 20. Plaintiff, however, believes his own qualifications to be "far superior" to those of other applicants admitted at Hofstra. Id. at ¶ 22. According to information plaintiff allegedly learned on an internet discussion board, his MCAT score was a number of points higher than that of the average member of Hofstra's 2011 class. Plaintiff's Declaration in Support of Motion for Preliminary Injunction ("Pl. Dec.") [Docket Entry No. 6] at ¶¶ 17-18. In view of this disparity, as well as various experiences he had obtained in research and clinical medicine, plaintiff concludes that he was denied admission due to his national origin (presumably American)[4] and/or his religion (Protestant). See Compl. at ¶¶ 22-23; P.I. Mem. at ¶¶ 6, 13, 19. Plaintiff further alleges that various top officials at Hofstra University are "prominent contributors to Jewish organizations on Long Island," P.I. Mem. at ¶ 13, and that an "advisor" informed him that

---

[3] Plaintiff subsequently learned that Hofstra maintained a "preferred waiting list," which he was not on. Pl. Opp. at 4.

[4] In the complaint, plaintiff does not specifically identify his national origin, but notes that his parents and grandparents were born in the United States. Compl. at ¶ 6.

3

defendant "is of Jewish heritage." Pl. Dec. at ¶ 16. According to plaintiff, that advisor also told him that "all medical schools are only looking for women and people of color." Pl. Opp. at 4.

B. Procedural History

Plaintiff commenced this action on August 4, 2011 in the United States District Court for the Central District of California. On August 19, 2011, he moved for a preliminary injunction ordering that he be admitted into Hofstra's medical program. By order dated August 29, 2011, the action was transferred to this Court. [Docket Entry No. 12].

The parties appeared before the Court on October 6, 2011, at which time plaintiff's motion for a preliminary injunction was denied. [Docket Entry No. 50] at 2:8-15. That same day, defendant served the instant Rule 12(c) motion.

II. Discussion

A. Legal Standard

In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57. 63 (2d Cir.2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir.2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusations." Matson, 631 F.3d at 63 (internal quotation marks and citation omitted).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir.2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir.2009)). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir.2004)).

B.  Analysis

Plaintiff's sole claim is one of intentional discrimination in violation of Title VI.[5] "Title VI prohibits intentional race-based discrimination by institutions that receive federal funds." Clyburn v. Shields, 33 Fed. Appx. 552, 554 (2d Cir. 2002) (citing 42 U.S.C. § 2000d). To establish a Title VI claim, "plaintiff must show, inter alia, that the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." Tolbert v. Queens College, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).

As an initial matter, and as defendant accurately points out, Title VI does not permit claims against an individual defendant. Therefore, the complaint must be dismissed for that reason alone. Folkes v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech., 214 F. Supp. 2d 273, 292 (E.D.N.Y. 2002) ("Title VI claims cannot be asserted against an individual defendant . . . [because] the individual is not a recipient of federal funding."); see also Russell v. Cnty. of Nassau, 696 F.Supp.2d 213, 238 (E.D.N.Y. 2010).

More fundamentally, however, plaintiff offers no factual allegations supporting his belief that he suffered discrimination on the basis of his ethnic origin and/or religion. At most, plaintiff alleges that he believes defendant to be "of Jewish heritage," that several top Hofstra officials contribute money to "Jewish organizations on Long Island," and that an advisor informed him that medical schools are "only looking for women and people of color." See P.I. Mem. at ¶ 13,

---

[5] In order to state a claim under 42 U.S.C. § 1983, "a plaintiff must demonstrate that the defendant acted 'under color of' state law." Tancredi v. Metro. Life. Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004). Recognizing that he cannot make such a showing, plaintiff has withdrawn his Fourteenth Amendment claim. See Pl. Opp. at 10.

Pl. Dec. at ¶ 16, Pl. Opp. at 4. From these facts, as well as his own qualifications, plaintiff concludes that he was denied admission to Hofstra based upon his national origin and/or religion.[6] Of course, such a flimsy set of allegations, coupled with such sheer speculation, is insufficient to state a claim under Title VI. See generally Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994) ("A plaintiff alleging . . . discrimination by a university must do more than recite conclusory assertions."). Accordingly, plaintiff's Title VI claim is dismissed. Fundator v. Columbia Univ., No. 95 CIV. 9653, 1996 WL 197780, at *2 (S.D.N.Y. Apr. 23, 1996) (Chin, J.) ("In a case such as this, where plaintiff has alleged no facts in support of his discrimination claim, it is simply not my role to second-guess [the university]'s decisions regarding admissions . . . .").[7]

III. Conclusion

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted. The Clerk of Court is respectfully directed to enter judgment in favor of defendant and to close

---

[6] Furthermore, insofar as plaintiff's claim is one of religious discrimination, rather than ethnic or racial discrimination, this claim also must be dismissed because religion is not a protected category under Title VI. See 42 U.S.C. § 2000d (prohibiting discrimination on the basis of "race, color or national origin"); see also Kamal v. Hopmayer, No. 05 Cv. 8164, 2006 WL 3197161, at *5 (S.D.N.Y. Nov. 2, 2006) ("Title VI does not protect against discrimination based on religion . . . .").

[7] Plaintiff seeks discovery "to determine the role of [p]laintiff's national origin in [d]efendant's decision." Compl. at ¶ 23. However, "[d]iscovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support . . . ." Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (citation omitted). It would be inappropriate to grant plaintiff discovery for the purpose of attempting to establish the factual basis of his claim.

this case.

**IT IS SO ORDERED.**

                              s/ Sandra J. Feuerstein
                              _____
                              Sandra J. Feuerstein
                              United States District Judge

Dated:    August 7, 2012
          Central Islip, New York